(162 App. Div. 164)

HAINES v. TWELFTH WARD BANK OF CITY OF NEW YORK.   (No. 5640.)

(Supreme Court, Appellate Division, First Department.   May 1, 1914.)

1. PLEDGES (§ 30*)—ACTIONS BETWEEN PLEDGOR AND PLEDGEE—SUFFICIENCY OF EVIDENCE.

  In an action against a bank, to which a one-half interest in a mortgage was assigned as collateral security for a note, evidence *held* to show that the bank purchased the mortgaged property upon a foreclosure of a prior mortgage, and sold it to a third party to protect itself and for its own benefit, and not for the benefit of an indorser on the note.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 75–85; Dec. Dig. § 30.*]

2. PLEDGES (§ 44*)—LIABILITY OF PLEDGOR—PERSONAL INTEREST.

  Plaintiff was an indorser on a note to defendant, the maker of which assigned a one-half interest in a mortgage to defendant as collateral security.   On a foreclosure sale under a prior mortgage defendant purchased the mortgaged property for $182,500, slightly less than the amount of the prior liens and costs, and pursuant to an agreement previously made with A. paid off all liens, except a first mortgage for $125,000, and conveyed to A. for $201,000, taking a mortgage for $50,000.   It paid a commission to the party through whom it negotiated with A. of $2,000.   The mortgage given by A. was wholly unpaid, and the first mortgage was in process of foreclosure, when plaintiff brought suit to have a judgment on the note satisfied and canceled, on the theory that defendant in purchasing the property acted as trustee. *Held*, that there was no fiduciary relation between plaintiff and defendant, and defendant was not precluded from bidding in the property for its own protection, and was not bound to apply the amount realized above the prior liens on the note, especially in view of the risk, assumed by it, that it would be unable to realize the full amount of the mortgage from A.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 103–107; Dec. Dig. § 44.*]

Appeal from Special Term, New York County.

Action by Frances Way Haines against the Twelfth Ward Bank of the City of New York.   From a judgment for plaintiff on a decision on a trial at Special Term, defendant appeals.   Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Philip W. Russell, of New York City, for appellant.

A. S. Gilbert, of New York City, for respondent.

LAUGHLIN, J.   The material facts are established by uncontroverted evidence.   The appellant is a domestic banking corporation.   On the 27th day of May, 1910, the Haines Realty Corporation executed

and delivered its promissory note, indorsed by the plaintiff and others, to the defendant, and assigned to it as collateral security therefor a one-half interest in a fourth mortgage for $25,000 on premises known as No. 12 Fifth avenue, borough of Manhattan, New York. On the 27th day of August, 1910, the bank commenced an action in the Supreme Court against the maker and indorsers of the note, and judgment thereon was duly entered in its favor on the 9th day of February, 1911, for the sum of $6,242.68. Pending the action on the note, the bank, as such assignee, was made a party defendant to an action for the foreclosure of a prior mortgage on the premises, and it purchased the property on the foreclosure sale on the 20th day of January, 1911, for $182,500. The prior liens and costs of foreclosure aggregated at that time approximately $185,000 or $186,000.

The cashier of the bank testified: That prior to the foreclosure sale one Baldwin called on him and inquired whether the bank contemplated bidding to protect itself, and that in reply thereto he said, "We hadn't made up our minds yet; that we were not—" Whereupon Baldwin informed him that he had sold the property two or three times, and that in his opinion it was worth about $200,000, and that he had a party interested in purchasing it for that amount, who, however, did not have the money to finance the deal, and would not bid at the auction, as he anticipated that the bank would bid to protect itself, and Baldwin suggested that the bank buy the property and pay off all liens subsequent to the first mortgage, and that he would obtain a purchaser for the property if the bank would take back a second mortgage for $50,000 or $55,000 in part payment. That finally it was agreed between the bank and one Alexander, whom Baldwin represented, and the agreement was reduced to writing on the 9th day of November, 1910, that the bank would bid not to exceed $182,500 on the sale of the property, and if it became the purchaser it would pay off the liens subsequent to the first mortgage and take a second mortgage for $50,000 in part payment of the purchase price, and Alexander would purchase it from the bank at $201,000. That prior to the foreclosure sale Alexander paid to the bank $26,000, which was the total of the cash payments to be made by him. That the bank purchased the property in fulfillment of that contract, and after complying with the contract on its part, and paying a commission of $2,000 to Baldwin, immediately conveyed the premises to Alexander. That prior to the foreclosure sale it had been determined by the officers of the bank to bid $190,000, if necessary. That if the bank had bid in the property at $190,000, it would have credited one-half the excess of the bid over the prior liens, which would be about $2,500, on the indebtedness represented by the note for which it held the assignment as collateral security. That the total indebtedness of the maker of the note to the bank at that time was $11,000.

Baldwin testified that the cashier informed him that, if the bank bid over $182,500, one-half of the excess of the bid over that amount would have to be applied on the indebtedness represented by the Haines note, "and that therefore he didn't want to bid over that; that he would still hold the security against Mrs. Haines"; that thereupon they agreed upon those figures as the maximum of the bank's obligation to bid;

that the cashier stated to him in substance that the bank would have to pay brokerage commissions, and that it would cost it 10 per cent. of the $50,000 mortgage to negotiate it, and that it would be necessary for the bank to sell the property for about $202,000 to protect itself.

The cashier's testimony does not fully harmonize with that of Baldwin, but it fairly appears therefrom that the bank negotiated with Baldwin, and contracted with Alexander, and bid in the property with a view to protecting itself with respect to the indebtedness of the maker of the note to it, part of which only was evidenced by the note. The bank still holds the mortgage for $50,000 wholly unpaid, and the first mortgage, which is for $125,000, is in process of foreclosure.

[1, 2] This action was brought on the theory that the sale at foreclosure, as between plaintiff and the bank, should be deemed to have been made for the price at which the bank was then under contract to sell it, or that in purchasing it the bank should be deemed to have acted as trustee for plaintiff; and the relief demanded in the complaint and decreed by the judgment is the satisfaction and cancellation of the judgment on the note, on the ground that in the circumstances of this case the purchase by the bank at the foreclosure sale constituted a payment in full.

There is no evidence that either Baldwin or Alexander in any manner represented the plaintiff, or that the plaintiff was made aware of the facts to which reference has been made by the bank or otherwise, or was induced thereby to refrain from bidding or obtaining others to bid on the sale. Nor is there any evidence tending to show that either Baldwin or Alexander would have bid, or would have obtained another to bid, on the property, had not the contract been made with the bank. The evidence does not warrant the inference that the bank purchased the property for the benefit of the plaintiff. All of the testimony is consistent with the bank's having purchased the property for its own protection and security with respect to the indebtedness of the maker of the note to it. It may very well be that, but for the fact that the bank held this assignment as collateral security, it would not have bid on the sale as an investment; but evidently it did not feel that it was fully secured by the mere liability of the maker and indorsers of the note, and it deemed it advisable to bid as high as $190,000 for the property, if necessary, and to enter into this contract with Alexander.

It is manifest that in so doing the bank assumed the risk of its ability to sell the mortgage for $50,000, or to realize on it in the event of a foreclosure of the prior mortgage, or of it. These risks it did not take for the benefit of the plaintiff, and it was under no obligation to incur them for the plaintiff. There is no principle of law or equity which precluded the bank from bidding in the property for its own protection. There was no fiduciary relation between the bank and the plaintiff. The facts disclosed, therefore, afford no basis for the relief granted.

It follows that the findings made by the trial court, in so far as they are inconsistent with the views herein expressed, are reversed, and findings in accordance with these views will be made, and the conclusions of law are reversed, and conclusions of law directing the dismissal of the complaint upon the merits will be substituted therefor,

and the judgment will be reversed, with costs to the appellant, and judgment entered, dismissing the complaint upon the merits, with costs.

Let an order embodying the reversal of findings and new findings and the conclusions of law, and for judgment as herein directed, be presented and settled on notice. All concur.